Continuing with the theme of Armenia, may it please the court, Elizabeth Masakian appearing on behalf of Adrian Reyes. I would ask that a few moments be reserved for rebuttal if necessary. There is no dispute that in the multiple interrogations of this 15 year old boy, that the interrogations that followed the polygraph, unwarned, un-Mirandized statements, should have been suppressed and were suppressed. The issue is whether, and I want to get into the details of what transpired between that statement and the subsequent statement. The first statement being at the San Bernardino Sheriff's Station, the second being at the Riverside Police Station. Do you know, I'm sorry to interrupt your train of thought, do you know how far apart the Sheriff's Station and the police station, do you know, I'll say it this way, do you know which Sheriff's Station he was subjected to the polygraph test? I do not know, and I do not know the distance between them. I do not believe, given the statements that were made at the beginning of the Riverside Police Station, that very much time elapsed. But I do not, I cannot answer that question, and the record is silent on that. Counselor, are there any findings on the record, one way or the other, as to whether the police here deliberately employed the good cop, bad cop routine to interrogate him without giving him Miranda? I should say the bad cop, good cop, where we interrogate him without Miranda and then interrogate him after he's confessed. No, and with regard to Missouri v. Siebert. Nobody ever asked. Nobody ever asked in the suppression hearing. The only questions that were asked and the only testimony that was elicited at the suppression hearing was, you know, did you beat him? Was there any brutality? Counsel, following up on that, am I correct in inferring that Missouri v. Siebert is not cited in either your blue brief or your gray brief? That's correct. First mention in this court came in response to a particular request from this court to comment on Siebert.  All right. Is it also fair to infer that when Mr. Reyes presented an argument based on Missouri v. Siebert, he didn't do it before the trial court? There's no reference whatsoever about that. That his reference was in connection with the appeal to the Court of Appeals. Yes. And that he phrased his argument based upon Justice Souter's plurality opinion and the holding that Justice Souter and his colleagues would have asked. Namely, that the two-step procedure, whether deliberate or not, had the effect of nullifying the Miranda warnings. That that was the way he phrased it and that was the way he presented it? I think so, but I think that it's a mistake to say whether deliberate or not. I mean, to be very fair, Missouri v. Siebert is a case about a deliberative two-step process. The problem is- But not in the ideas of, not in the position that Justice Souter took. Justice Souter said the focus of attention is not on the intent of the officers, but rather on the impact of whatever was done on the defendant. And in her dissenting opinion, speaking for the minority, Justice O'Connor agrees with that. Right. The good faith, bad faith of the- Right. She says that the intent of the officers- What's important is how has the individual been affected? And isn't it fair to infer as well that that's kind of the way the Court of Appeals treated it? They treated it as a variation on what was the principal claim, namely that the, all the statements were involuntary, simply as a variation on the theme that this is involuntary. And, but the magistrate judge did not. The magistrate judge's discussion of it really focused in, I think it was in that footnote, where he really focused on the issue of deliberate. And I have not found a case, and what I ask this Court to do, is to extend, really. I'm not sure extend is the right word, but to consider the fact, given the circumstances of this case, that what these officers did was the functional equivalent of a deliberate two-step process. How do we do that when there have been no findings? It wasn't raised at any point in the State proceedings. It wasn't raised before the district court. The magistrate didn't get to investigate this? Well, the magistrate did. I mean, the magistrate — Well, I asked you if there were any findings. You told me there were no findings in the question of whether it was a deliberate two-step process. No. What I meant to say is the magistrate found against Mr. Reyes because there was no evidence of a deliberate two-step process. Right. But there are no findings on that question. No. There are no findings. There are no findings. There's no evidence because nobody thought to develop it. Exactly. Exactly. I don't need a finding at this stage. I mean, what we have here is — and we all know what happened. We have an interview at the aunt's house. A month later, we get a SWAT team at 5 to 5.30 in the morning, get him out of bed, handcuff him, search the house, unhandcuff him so he can have his breakfast, take him down to the sheriff's department station, interview him, unsuccessfully from the standpoint of the police because he doesn't confess. But he seems to say, listen, I'm quite happy to take a lie detector test. They take him home to his home. They pick him up the next morning so he doesn't come in himself. The police go and get him. Right. Take him to the sheriff's department. They do the polygraph.  Then, at that un-Mirandized interview in front of Brandt and Medici, he confesses, at which point they put him in the car, they take him to the Riverside police station, they now Mirandize him and get him again. So that sequence is right there in front of us. Do we need an explicit finding from any court of deliberateness, or is that something that we can infer from what happened? I believe it's something you can infer. So how do we get there? Well, I think you get there from a number of things. In Missouri v. Siebert, they talk about, in the footnotes, the court talks about the different instructional methods that are used. I think you look at the entire circumstances of the interrogation. You look at February 9th and 10th, where time after time, Reyes says, I don't want to talk anymore. I don't want to answer any more questions. Stop asking me questions. And Brandt says, no, I'm not going to stop. And time after time, he tries to invoke, he tries to stop the interrogation, and he's told, no, we're not going to stop. We want to ask you these questions. And so then, excuse me, I just need to get some water. So then what we look at is, once he is Mirandized, what is his state of mind as to whether he can stop, whether he can say after he's Mirandized, I don't want to say anything to you. He has been told over a period of hours, over a period of two days, you can't stop this. I'm not going to stop asking questions. But the question under Miranda and under Siebert or Seibert is not whether it's voluntary. The question is whether Miranda has been subverted. A Miranda violation does not require involuntariness. It is independent of voluntariness. Absolutely. But in this case, I believe what you have is a Miranda violation and involuntariness. And because involuntariness would go to an Elstad question as opposed to a Siebert question. Yes. Yes. And I think this is really a complicated issue in terms of the interplay of Siebert and Elstad. But along that line, the leading cases in the Ninth Circuit dealing with the proper are all direct appeals from convictions in federal district court, where the Ninth Circuit is free to evaluate the record de novo, exercise independent judgment, and pay no deference to anybody. Here we have to apply this under legislative command that we defer to the state court unless the state court acted unreasonable in whatever it did. In order to do that, we have to determine what is the controlling law. Now Elstad was the controlling law. The memoranda submitted by both parties in response to our inquiry suggests that Missouri v. Sider has expanded or changed or modified that existing law in some particular. And you have four opinions of the court that disagree on many things. How do we determine what is the clearly established law for purposes not of direct appeals in federal court, but for purposes of habeas evaluation? I understand what you're saying, Your Honor. And I think it's not – I don't think that Oregon v. Elstad and Missouri v. Siebert are in combat – in competition. What is the word that I'm – I don't think that they're saying different things. I think one expands on the other. And I think both in this instance. I think both in this instance are U.S. Supreme Court cases that the lower court, the state court, decision was contrary to those two decisions. Well, one of the problems following up on Judge Fletcher's question is that in Williams, U.S. v. Williams, what the Ninth Circuit did was establish a rule for purposes of the circuit, circuit law, which may or may not help us to understand Supreme Court law. And then said, well, there are major findings that would have to be made before we could apply the rule we came up with. Therefore, we're remanding it to the district court, which you could do under the circumstances. Which we can't do today. Assuming we reach the same point in this case, what do we do? Well, let me just say that the five factors that the Williams court discussed, the completeness, whether there was overlap, all of those change in locations, change in interrogators, all support Mr. Reyes's position. Had this case been brought in 2009, we could have asked for you to remand for a hearing on the issue of deliberation if that was an issue. We can't do that now. I think what we can do. Why can't we? Well, I'd love to say that you can. I'd love to say that under Harrington versus Richter, you're not precluded from remanding it for an evidentiary hearing on the issue of deliberateness, but I also think that. Why does Harrington propose? And Pinholster, and Pinholster, Collin versus Pinholster in terms of evidentiary hearings. Are you aware of our stay in advance practice with respect to Pinholster? No, I'm not. What we have held is that if we've got a problem under Pinholster so that we cannot take evidence in federal court on federal habeas. But that this evidence could be taken by the state court. The district court has it within its discretion to stay and obey the federal proceeding while there's a remand of the state court so the state court can take evidence on the question. Then I, then I, I'm corrected then. Yeah, but so we, that, that, that is our precedent. Okay. The Supreme Court denied cert on that. The state didn't like that precedent, sought cert, denied cert. So there is a procedural vehicle. I don't know whether it's appropriate in this circumstance. I don't know, as I indicated to you, whether it's necessary to have an explicit finding of deliberateness given the clear inference that can be drawn from the sequence of events. And I don't think there is, Your Honor, given, given the history of this case, I don't think there is. And the only thing that I would add, because I'm well over my time, is the overwhelming thing that makes this case different from Elstad, makes this case different from Siebert and Williams, is the fact that what we have here is a 15-year-old minor. If we're talking just voluntariness, this is a much harder case for you because we have a holding from the court of appeal that this was voluntary. But we do not have a holding from the court of appeal that correctly understands Seibert because to the degree that we can infer something from what the court of appeal wrote, it seems to think that Seibert is about voluntariness rather than about Miranda. Exactly. Let's hear from the State and then we'll give you a chance to respond. Good morning, Your Honor. May it please the Court. I'm Kevin Viena, California Deputy Attorney General, on behalf of Respondent Napelde in this matter. The, if I could respond to a couple of questions that the court had early on. One was how far is it from the, between the two police stations. I could find nothing in the record that answers that question either. You don't know which of the sheriff's department stations it is? I do not. What I do know from the record though is that apparently there was a delay of time, not only long enough to drive between two different spots, but also a delay that would call the district attorney's office and confer. So how long does that take? Well, the, I guess if you know who you're going to talk to, maybe not too long. If you don't, it might take a little bit longer. Would it have taken place during the car ride? I presume it could have. As I read the beginning of that, of the final interview, I didn't infer that, but it's certainly possible. I read that too. He says, I've talked to the DA and they've got some more questions. Well, you know, these guys lie all the time to the person they're questioning. He may not, he may never have talked to the DA during that period. That's certainly possible, Your Honor. I mean, ordinarily I would, I would hesitate to accuse the cops of lying. But it's obvious that that's an accepted technique when they're questioning. They lie all the time. They certainly do. I, I don't take it as true that he called the DA. Maybe he did, maybe he didn't. I know that he said he did. Yes, Your Honor. The, let's see, the, on the court's question about whether there has to be a finding below on the question of a deliberate two-step. I don't think there has to, well, I think someone has to find that there's a deliberate two-step. That's what Williams says, I believe. But Williams talks about items that would, that look like circumstantial evidence, not direct evidence from some police officer saying that this is how I was, as existed in Siebert. This is how I was trained, and this was my intention as I did that. So I. In Williams, they did remand. Yes, they did, Your Honor. I, but. In other words, the court, with everything it had before it, spelled out in detail and footnotes and in the opinion. With all of that, they felt in, that there was insufficient to directly address it, so it had to be remanded. I, I think part of that, I, I believe part of that was that in Williams, the court clarified what the rule from Siebert would be, or, or how this circuit evaluated the rule from Siebert. That is, it was dependent on Justice Kennedy's concurrence as the, as the narrowest statement of, of the opinion of five justices, and that required a deliberate two-step. And so I think because that wasn't clear when the matter was in the trial court in Williams, that that, that's why it was necessary to remand us. So the appropriate. You agree that there are no, there are no findings here on a deliberate two-step? I. No findings one way or the other? I, no, no court ever made factual findings. I, I don't think I would agree that that issue wasn't considered and addressed in the California Court of Appeals. Didn't the California Court of Appeals, though, address it in the context of what Mr. Reyes argued, which was, as I read it, and let's, let's, and please correct me if I'm wrong, but it seems to me that Mr. Reyes was arguing not Justice Kennedy's analysis, but rather Justice Souter's plurality opinion. I, I agree with you that that, that, that the very brief statement regarding Siebert, the, the expressed addressing of Siebert in the Court of Appeals opinion seemed to address only the plurality or only Justice Souter's for-justice opinion in Siebert. I, I. Looked at what Mr. Reyes argued to the Court of Appeals? I, I didn't look at it, but, but I, I, I read briefly, or I read quickly his AOB yesterday, and I think that's what it was. All of the references seem to be to the initial Justice Souter. He, he, what I read more carefully was his habeas corpus petition in the Court of Appeal, and all of those references were to what seemed to be the initial opinion in Siebert, that is the, the Justice Souter's opinion. You do not disagree with counsel for Mr. Reyes that this court is free to exercise its independent judgment to evaluate the facts as if we were a jury and come to the conclusion as to whether, in fact, the way Mr. Reyes was treated was part of a, of a protocol or a plan to get him to confess without Miranda and thereby undermine Miranda? You, you think we, we have enough before us to make that decision? No, Your Honor. I, but, but I think the California, I think the fact that the California Court of Appeal addressed Siebert and didn't talk about the deliberate two-step is not the only, is not all that matters here. In our brief, or in our informal response to the California Court of Appeal, we referred to existing California law, People v. San Nicolas, which is at 34 California Report, California 4th at pages 638 to 639, that makes it quite clear that California recognized as the rule from Siebert, the California, the law in California as a rule from Siebert was that there had to be deliberate police misleading or a deliberate police action. Was that decision, I don't have that case before me. Does, was that decision by the California Supreme Court prior to the Court of Appeal's decision? Yes, Your Honor. It's in 2004. Well, I read the Court of Appeal as not understanding Siebert, but the Court of Appeal writes, and it's just a single paragraph, is that we find that there was a voluntary statement both at the Sheriff's Department station post the lie detector test, and it was a voluntary statement later at the Riverside, and then they quote from Siebert, from Justice Souter's opinion, on the question as to whether or not it's voluntary. They do not quote the footnote that is attached immediately by Justice Souter to that very passage that they quote, where Justice Souter says, this is not a question of voluntary. We do not reach voluntariness. So the Court of Appeal just does not understand either Souter's opinion, nor does it understand Kennedy's opinion, because voluntariness is not the question, nor indeed is voluntariness the question under Miranda. The question is whether or not the Miranda warning has been given in Miranda, or whether under Siebert, the Miranda warning has been subverted. But the Court of Appeal talks only about voluntariness. It simply misreads the case. Do you agree with me? I – what I would say is I think your interpretation is a reasonable one. Interpretation of Siebert or of the Court of Appeal's opinion. That is, I think a fair-minded jurist could reach the same conclusion that you just said, that the Court of Appeal misunderstood the law, based only on that – only on that statement. However, what I would rely on, maybe the last refuge, but what I would rely on is that the courts are presumed to know and apply the law, and they didn't say anything. The evidence is right there in front of me that they're talking about voluntariness when that is not the issue, and that's the only thing they talk about. Well, they did say that the police actions here did not completely undermine or subvert the later Miranda warning. That's correct, and that immediately follows the lead-in sentence to that very short paragraph that says we're addressing voluntariness. Yes, Your Honor. And the quotation from Souter, if left alone and quoted on only the portion they do, makes it sound as though Souter's talking about voluntariness. They don't quote the footnote that says I don't reach the question of voluntariness. I mean, it is, to me, unambiguous that the Court of Appeal is addressing the question of voluntariness. I see no other way of reading that paragraph. I think that's all that they expressly addressed, I think largely because that was the heart of the argument by Mr. Reyes before them. But the – but I think – He emphasized and focused on voluntariness and only introduced Missouri v. Sider as an aside or a – Well, yes, and I mean, it's – I can't explain why it was done that way. I suspect that it was because he was constrained by the absence of the development of the evidence of that at the trial court. The absence of what, I'm sorry? Of a deliberate two-step. So he had to find some other way to try to prevail, to make Siebert a supporting argument for his lack of voluntariness and his focus on – his emphasis that he should prevail even if LSTAT is the law, because what happened in the February 9th and initial February 10th did lead to a lack of voluntariness or resulted in involuntary statements by Mr. Reyes. Now, do you – I got a couple of questions. It was asserted at the very beginning of the – your opponent's argument that there's really no dispute that the interrogation at the Sheriff's Department office immediately following the lie detector, that that should have been Mirandized. Well, and the trial court so ruled. And you agree with that? I think we're bound by it. Okay. So, yes. So Miranda was required then, wasn't given. So we got that part. Correct, Your Honor. What do we do with the fact that this case – I guess my next question is, the court of appeal does address Siebert. So Siebert has been brought to its attention, an argument has been made under Siebert focusing on the plurality opinion of Justice Souter. On the other hand, you can expect a competent jurist doing his or her job to read the entire case that's been cited to them. I mean, I never totally trust a lawyer who pulls something out of a case and says that's what it means. You've got to read the whole case. So I think the Siebert argument has at least been exhausted, even if the argument was based upon the Souter opinion. Yes, Your Honor, I agree with that. And I would add that I think a competent jurist would note that in our briefing, we cited to San Nicolas for the proposition that there has to be deliberate misconduct on the part of the police. Is it possible that we need a fact-finding from the state court on the question of deliberateness? I'm a little reluctant to say that the district court can do the finding based upon the circumstantial evidence, although I have to say it just jumps out at me that this is deliberate. I mean, these are experienced police officers. They go at this for two days following what is absolutely textbook two-step process, and it would just, I mean, it jumps out at me that it's deliberate. But I have to say I would be more comfortable with a court that actually takes testimony from the officers so that the officers can say, yes, we were trained to do this, or they can say, no, this is a total accident, we didn't do it deliberately, and then the trial judge can believe or not believe. What am I supposed to do with that? Are we supposed to remand to the state court for a fact-finding on this under our stay-in-abeyance procedure? The, well, as you indicated, we weren't happy with the decision that led to stay-in-abeyance, but I understand that's the law here. The difficulty, I think, is this. If it were to be remanded, and if the district court For a fact-finding hearing. Well, I think the fact-finding hearing should first take place in the state court. That's what I mean, remanded to the state court for the fact-finding. But I think if that happened, and it would be back before the state courts for that, they would find it to be procedurally defaulted. That is, this is very stale at this point, and Well, counsel, if we were going to remand in a manner that would get it back to the state court, we would have to, or it would appear, we would have to come up with some clearly established law by Missouri v. Sider. The consensus among circuit courts, not only this one, but most of the others, is that you focus on a kind of a hybrid. You take part of one opinion and part of Justice Souter's opinion. Does the government want to be heard on what would be remanded? What question would be controlling and therefore factual determinations would be I don't see how we get to additional fact-finding without first determining that the state court determination was unreasonable. And you might reach that based on your approach, saying that the state court, in your opinion, clearly misunderstood the law. It made a determination as to voluntariness. I got that. But as I read it, there's zero determination on whether or not it was a deliberate undertaking of the two-step process. Well, and because there was no, because that was not developed, attacked, it was not the focus of attention in the trial. So you're reading it the same way I am. They just, they simply didn't address that question. What I would say, I would read it as, at this point, as an unexpressed or silent opinion that cyber applied or could apply in this situation and that Mr. Reyes had not developed the case, either in the trial court or in his habeas petition, to show that he was entitled to relief. Recall that we have a silent denial of his habeas corpus petition, which I believe encompasses every issue that might be in cyber. And so the court would have to say that there was an unreasonable application of cyber based on the facts that were before them. And since there were no facts and no argument that there was a deliberate evasion of Miranda, the state court determination is reasonable. Well, this case bothers me because we have a 15-year-old boy subjected to what clearly appears on his face to be a deliberate two-step process in violation of cyber. It's not at all clear to me that this is a reliable confession. He may have been convicted based upon a confession that is not a true confession. And you're telling us that we're just stuck with this answer? No, Your Honor, I wouldn't say that. And what I would say is that it is clear that every court that has looked at this has been troubled by the police conduct, in particular, by the continued questioning after Mr. Reyes, intermittently is the term used by the district court, intermittently declined to answer some questions. But what I would say is the- Intermittently said, quit asking me questions. Yes, yes, Your Honor. But the California Court of Appeal spent, I don't know, maybe 12 pages or so looking at this. The magistrate judge did what I think was a marvelous job, recognizing all of the arguments and addressing all of the arguments, all of the factors presented by Mr. Reyes in support. But then also noting several factors that showed that his will was not overborn. The period of time for the entire interrogations, all the interrogations on the 10th was four hours, all occurred in daylight. His parents had consented to his undergoing the polygraph examination. Mr. Reyes was deft in verbally parrying questions from the polygraph examiner and also by the detectives afterwards. He showed knowledge of criminal law, was familiar with the penalty. He- Wait a minute. That last one I hesitate on. The cops say, have you ever heard of a 15-year-old going to jail? He says no. How knowledgeable is this kid again? Well, he knew that- 15 years old? The- The kid has not gone to law school. He's not gone to college. He's not even out of high school. I don't know if he's in a dropout. Don't give me that he's a sophisticated kid about the law. I would say- The other stuff about he's parrying and so on. But this is a 15-year-old boy who's not very well educated. Not, I guess what I would say then is that he's a, he's not a naive 15-year-old. He was, he was, in fact he resisted the implications from the police that he could not be sentenced to life imprisonment. He seemed to be aware of the vicarious liability for other folks who might be in the car when the shooting occurred. He was given water and then food. He slept at home the night before. The district court characterizes him as being above average intellectually, and that certainly seems to be correct. As I read through the four or five interrogations, he was alert and responsive and tough. Would you be opposed to a remand to the state court for purposes of finding whether or not this has been deliberate? I guess I'm not sure how to answer that. Would I see something unjust in that if there were no other laws involved, then I would say no, I wouldn't see something unjust in it. State's free to waive an objection for procedural default. That is to say, would you, would you oppose a stay in advance remand of the district court for, to allow the state court to do fact finding on deliberateness? I, I, I think that's a, I, I think that question, well, I would presume that that hearing would occur in the superior court, and my office wouldn't do it. It would be the district attorney's office, and I can't say, I, I can't I don't think I can bind them with my opinion at this point. They're a separate prosecuting agency, and so they would be free to make whatever arguments would be appropriate in the superior court. Would you, to the extent that your office has any control over it, be opposed? I, I'm opposed because I don't think it's necessary. I, I think the state court. Not necessary because we can make a finding of deliberateness? I think you have the power to decide whether the state court unreasonably failed to find facts. I, I, I believe that's correct, correct under Taylor versus Maddox. And if you were to find that there was an unreasonable fact finding procedure for some way in the, although I disagree, he had his hearing. But if you were to find that there were an un, unreasonably defective fact finding procedure. One that's so defective I, I think that the chief judge said that you would merely have to point it out to fair minded jurists and they would see that it was defective. If you found that, then I think it goes back to the, the district court for de novo review. Okay, any, any further questions from the bench? Thank you. Thank you, Your Honor. Let's, let's put two minutes on the clock. I won't even take that long, Your Honor. I believe a remand is unnecessary because you can make a finding of deliberateness based on the record in this case. But what I would like to do is just address some of the comments that Mr. Viena made. The fact that the parents consented to this in no way addresses the issue that's before this court or is not controlled. To the lie detector test. The fact that, I, I think to call what he does parrying, it attributes a kind of intelligence and sophistication to him that he doesn't have. He was clearly afraid at many points along the interrogation. The court reporter says sniffling, sniffling. Now, I have no idea what conclusions the panel is going to reach about anything in this case. There's been no conference on it. But I want to ask you a hypothetical question. Conceding that the bulk of your presentation and your predecessor's presentations on behalf of Mr. Reyes at all stages is focused on voluntariness versus involuntariness. And only secondarily on Missouri versus Sider. I want to ask you this question. Assume hypothetically that this court should find that under Elstead, we cannot conclude that the decisions of the California courts were unreasonable. And must therefore turn our attention to Missouri versus Sider. What rule of law do you contend the multiple opinions in Sider present as clearly established law for purposes of habeas review? Do we rely on Justice Kennedy's decision? Do we rely on Justice Souter? Do we rely on some compendium of the two of them, which seems to be Williams? Do we consider Justice O'Connor's views at all? What is the law of that case for habeas purposes? Williams tells us what the law of the case is for the Ninth Circuit in direct appeals. I think that Williams also tells you, suggests to you what the law should be with regard not only to 2255 in direct appeals, but 2254s. And that is to look at those five factors. And without going into them in detail, I think those five factors support a finding that there has been a violation. Again, I say, and I'm out of time, but I just want to. We took him well over. Go ahead. I don't think I can overstate and emphasize enough the fact that this was a 15-year-old. And whether you're talking about the two-step process, whether you're talking about Oregon versus Elstead, you had a clearly a deliberate attempt to bystep and to sidestep and to minimize or disregard completely Miranda. They had absolutely at every point along the way, they could have and should have given him Miranda warnings. And when he said, and I ask you to just remember this because it really sticks in my mind, stop asking me questions. I will not stop. A 15-year-old. And I think that in all of the argument about Oregon versus Elstead and Missouri versus Siebert, what these cases, none of these cases have is a vulnerable minor, a 15-year-old. There is no way that you can say that he's sophisticated and he understands criminal law. He clearly didn't. He was a scared 15-year-old kid who had been in lengthy interrogation, I mean, four hours. Even if we say it was four hours, that is a very long time for an adult. Patricia Siebert was an adult. Williams was an adult. Elstead was an adult. This was a 15-year-old kid. And with that, Your Honor, I would submit. Thank you. Thank you very much. Thank both sides for your arguments. Reyes v. Lewis now submitted for decision.
judges: Singleton, Fletcher, Bybee